**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0279-22

ESTATE OF JENIFER S. TOWLE
and BRICE TOWLE, as
administrator of the estate of
JENIFER S. TOWLE,

      Plaintiffs-Appellants,

v.

HUDSON COUNTY, HUDSON
COUNTY DEPARTMENT OF
CORRECTIONS, and GD
CORRECTIONAL SERVICES,
LLC,

      Defendants,

and

CFG HEALTH SYSTEMS, LLC,

      Defendant-Respondent.

_____

Submitted December 12, 2023 – Decided January 24, 2024

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2674-19.

The Marchese Law Firm, LLC, attorneys for appellants (Daniel G. Marchese, of counsel and on the brief).

Holtzman, McClain & Londar, PC, attorneys for respondent CFG Health Systems, LLC (Stephen D. Holtzman, of counsel; Jeffrey S. McClain, on the brief).

PER CURIAM

Plaintiffs, the Estate of Jenifer S. Towle and her father Brice Towle, in his capacity as administrator of the estate, appeal from a May 12, 2020 Law Division order granting reconsideration of a March 9, 2020 order and dismissing their complaint against defendant CFG Health Systems, Inc. The motion court found plaintiffs failed to comply with the affidavit of merit statute, N.J.S.A. 2A:53A-26 to -29. For the following reasons, we affirm.

I.

Jennifer Towle died on July 14, 2017, while in the custody of Hudson County Department of Corrections and under the care of CFG Health Systems, LLC (CFG), a private correctional healthcare provider. Plaintiffs allege Towle suffered from severe psychiatric and mental health issues, causing her to be admitted to the jail's infirmary and placed on suicide watch. Plaintiffs further allege that hours before her death, Towle complained of excruciating stomach

2

pain to CFG staff. An autopsy revealed Towle had ingested foreign items such as Styrofoam, plastic wrappers, drink cartons, paper, and a nail clipper. The foreign material resulted in a perforated gastric ulcer and ultimately sepsis.

Plaintiffs filed their complaint on July 1, 2019, alleging failure to properly monitor Towle's eating behaviors, address Towle's mental health issues, or provide appropriate medical care to Towle. On the case information sheet, plaintiffs categorized the case as "Tort-Other."

CFG filed its answer on August 9, 2019, asserting as a defense failure to file an appropriate affidavit of merit for a claim of professional negligence as required by N.J.S.A. 2A:53A-26. Its answer also provided the names and specialties of potentially liable healthcare providers.[1] CFG's case information sheet identified the case type as medical malpractice.

On November 1, 2019, plaintiffs timely filed and served on CFG the affidavit of merit of Dr. Kevin J. Kikta, DO, a physician board certified in emergency medicine. Although the court did not schedule a Ferreira[2]

---

[1] The potentially liable physicians identified by CFG were advanced nurse practitioners, psychologists, and medical doctors board-certified in psychiatry, family medicine, internal medicine, and infectious diseases.

[2] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 147 (2003).

conference, neither party requested one. The 120-day statutory window for timely submission of affidavits of merit expired on December 7, 2019.

On December 17, CFG moved to dismiss the complaint. It argued plaintiff failed to timely serve an affidavit from a qualified person as required by the statute. Plaintiffs filed a cross-motion to extend time to serve an appropriate affidavit. The motion court denied CFG's motion in a written opinion and extended discovery by sixty days to allow plaintiffs additional time to file appropriate affidavits. The court found that while the affidavit of merit statute applied and that Dr. Kikta's affidavit of merit was inadequate,[3] extraordinary circumstances warranted denial of CFG's motion, namely: the merit of plaintiffs' claim; plaintiffs' counsel filed an AOM (albeit insufficient) within the 120-day deadline; the court's failure to schedule a Ferreira conference; and the lack of prejudice to CFG given the early stage of litigation. Plaintiffs later submitted additional affidavits of merit by a nurse practitioner, a board-certified psychiatrist, and a board-certified internal medicine specialist on May 8, 12, and 14, 2022, respectively.

CFG filed a motion for reconsideration. At the motion hearing, plaintiffs' counsel explained that the suit "was inadvertently mislabeled." On May 12,

---

[3] The court found that Dr. Kitka was not qualified in the same specialties as the potentially liable physicians identified by defendant.

A-0279-22

2020, the court granted reconsideration and dismissed plaintiffs' claims in a written opinion. The court found it had "erred only with respect to its analysis in finding extraordinary circumstances by undervaluing the plain allegations of the [c]omplaint with respect to medical malpractice and overvaluing both [p]laintiff[s'] uncertainty that an [affidavit of merit] was required and the absence of a Ferreira conference." The court acknowledged CFG filed a timely answer, raising the affidavit of merit statute as a defense and providing the names and specialties of the medical professionals involved. Citing Paragon Contractors, Inc. v. Peachtree Condominium Association, 202 N.J. 415, 423, 426 (2010), the court reasoned "neither attorney inadvertence nor the court's failure to hold a Ferreira conference warrant[ed] a finding of extraordinary circumstances" and that plaintiffs "cannot create the extraordinary circumstances upon which [they rely]."

On appeal of the court's May 12 order granting reconsideration of the court's order dismissing plaintiffs' complaint with prejudice, plaintiffs argue the following:

> I. THE LOWER COURT IMPROPERLY REVERSED ITS OWN DECISION ON DEFENDANT/RESPONDENT'S MOTION FOR RECONSIDERATION.

II. PLAINTIFFS SHOULD NOT BE PENALIZED BECAUSE A TIMELY AFFIDAVIT OF MERIT WAS INITIALLY FILED, BUT NO FERREIRA CONFERENCE WAS SCHEDULED OR OTHERWISE HELD BY THE COURT BEFORE DEFENDANT/RESPONDENT'S FILED ITS INITIAL MOTION TO DISMISS.

II.

A decision on a motion for reconsideration is reviewed under the abuse of discretion standard. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion is a ruling that "represents a manifest denial of justice." In re Estate of Lash, 329 N.J. Super. 249, 263 (App. Div. 2000).

We review de novo a trial court's decision to dismiss a complaint under the affidavit of merit statute. Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016). We also review de novo a trial court's determination of whether the plaintiff has demonstrated extraordinary circumstances as a defense to the affidavit of merit statute. Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 113 (App. Div. 2011).

III.

We first consider whether the motion court abused its discretion by granting reconsideration of its March 9, 2020 order. Plaintiffs contend CFG did not argue the court's decision was arbitrary, capricious, or unreasonable, and

6

that CFG only presented a general dissatisfaction with the court's order which is not sufficient grounds for reconsideration under Rule 4:49-2. CFG argues that Rule 4:49-2 applies only to final orders or judgments, and that the applicable rule in this case is Rule 4:42-2 which applies to interlocutory orders.

As a preliminary matter, we address the appropriate standard. We recently explained and distinguished the two discrete standards a trial court employs in reconsideration. Lawson v. Dewar, 468 N.J. Super. 128 (App. Div. 2021). "Rule 4:49-2 applies only to motions to alter or amend final judgments and final orders, and [it] doesn't apply when an interlocutory order is challenged." Lawson, 468 N.J. Super. at 134. A motion for reconsideration of a final order pursuant to Rule 4:49-2 is considered under a more demanding standard that requires a showing "that the challenged order was the result of a 'palpably incorrect or irrational' analysis or of the judge's failure to 'consider' or 'appreciate' competent and probative evidence." Ibid. (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (1996)). On the other hand, reconsideration of interlocutory orders under Rule 4:42-2 has a "far more liberal approach" in comparison:

> Rule 4:42-2 declares that interlocutory orders "shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." A motion for reconsideration

does not require a showing that the challenged order was "palpably incorrect," "irrational," or based on a misapprehension or overlooking of significant material presented on the earlier application. Until entry of final judgment, only "sound discretion" and the "interest of justice" guides the trial court, as Rule 4:42-2 expressly states.

[Ibid.]

In its motion papers, CFG, despite its contention on appeal that the court should have decided the motion under Rule 4:42-2, moved for reconsideration pursuant to Rule 4:49-2. The motion judge, in turn, decided the motion under the Rule 4:49-2 standard. However, because the March 9 order was not a final order or judgment, the motion should have been reconsidered as an interlocutory order under the standard set forth in Rule 4:42-2.

Despite the court's analysis using the heightened Rule 4:42-9 standard, its conclusion is nonetheless correct. The court went beyond the appropriate, more liberal Rule 4:42-2 standard, which grants wide discretion to amend interlocutory orders in the interest of justice and found its own March 9 ruling "failed to appreciate the significance of probative, competent evidence." The court found that it erred "with respect to its analysis in finding extraordinary circumstances by undervaluing the plain allegations of the [c]omplaint with respect to medical malpractice and overvaluing both [p]laintiff's uncertainty that

an [affidavit of merit] was required and the absence of a <u>Ferreira</u> conference." The court identified what it viewed as an error in its analysis and sought to correct it to conform with the law. Given the liberty our trial courts have to revisit an interlocutory order in the interest of justice, we conclude the trial court's order granting reconsideration was not an abuse of discretion.

We now consider the merits of whether plaintiffs' failure to submit a timely affidavit of merit is excused by extraordinary circumstances. The affidavit of merit statute requires plaintiffs in professional malpractice actions to:

> within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

> [N.J.S.A. 2A:53-27.]

In medical malpractice actions, N.J.S.A. 2A:53A-41 requires the expert executing an affidavit of merit to "be equivalently-qualified to the defendant" physician. <u>Buck v. Henry</u>, 207 N.J. 377, 389 (2011). In other words, when a

defendant is a board-certified specialist, the plaintiffs must provide an affidavit of merit from a physician board-certified in the same specialty. See N.J.S.A. 2A:53A-41(a).

"The failure to provide an [affidavit of merit] is considered 'a failure to state a cause of action' under N.J.S.A. 2A:53A-29 and warrants a dismissal with prejudice." A.T. v. Cohen, 231 N.J. 337, 346 (2017) (quoting N.J.S.A. 2A:53-29). "The core purpose underlying the statute is 'to require plaintiffs . . . to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of the litigation.'" Paragon, 202 N.J. at 421 (quoting Alan J. Cornblatt, P.A. v. Barrow, 153 N.J. 218, 242 (1998)).

Recognizing the harsh consequences of failing to comply with the procedural requirements created by the statute, the Supreme Court in Ferreira issued a mandate to trial courts to conduct a case management conference ("Ferreira conference") within ninety days of the service of an answer in all malpractice actions. Ferreira, 178 N.J. at 154. The court explained:

> At the conference, the court will address all discovery issues, including whether an affidavit of merit has been served on defendant. If an affidavit has been served, defendant will be required to advise the court whether he has any objections to the adequacy of the affidavit. If there is any deficiency in the affidavit, plaintiff will

10

have to the end of the 120-day time period to conform the affidavit to the statutory requirements. If no affidavit has been served, the court will remind the parties of their obligations under the statute and case law.

[Id. at 155.]

In addition to mandating check-in conferences, the Supreme Court has carved out equitable exceptions to "temper the draconian results of an inflexible application of the statute." Id. at 151. First, "[a] complaint will not be dismissed if the plaintiff can show that he [or she] has substantially complied with the statute." Id. at 155 (citing Palanque v. Lambert-Woolley, 168 N.J. 398, 405-06 (2001)). Second, "[w]here extraordinary circumstances are present, a late affidavit will result in dismissal without prejudice." Ibid. (citing Cornblatt, 153 N.J. at 414-15). To determine whether extraordinary circumstances are present, the court must engage in "a fact-sensitive [case-by-case] analysis." Tischler v. Watts, 177 N.J. 243, 246 (2003) (alteration in original) (quoting Hartsfield v. Fantini, 149 N.J. 611, 618 (1997)).

Our courts have recognized the affidavit of merit statute "does not impose overly burdensome obligations. The plaintiff must keep an eye on the calendar and obtain and serve the expert's report within the statutory timeframe." Ferreira, 178 N.J. at 146. As such, the Supreme Court has firmly established

11

"attorney inadvertence will not support the extraordinary circumstances standard." Palanque, 168 N.J. at 405; see also Ferreira, 178 N.J. at 152 ("[W]e do know that attorney inadvertence is not such a circumstance entitling plaintiff to a remedy of dismissal of a complaint without prejudice."). "[P]arties are presumed to know the law and are obliged to follow it." Triarsi, 422 N.J. Super. at 122. Our Supreme Court has also held that despite the court's obligation to conduct a Ferreira conference, the failure to do so is not by itself extraordinary circumstances. Paragon, 202 N.J. at 426 ("[G]oing forward, reliance on the scheduling of a Ferreira conference to avoid the strictures of the Affidavit of Merit statute is entirely unwarranted and will not serve to toll the statutory time frames.").

Applying these principles, we conclude the facts presented here do not rise to extraordinary circumstances. The record can be summarized as expiration of the 120-day calendar, combined with lack of a Ferreira conference. The record neither reveals why the court did not schedule a Ferreira conference nor why plaintiffs' counsel was unable to comply with the statutory burden or seek a Ferreira conference to clarify their statutory obligation. Nonetheless, it is well established that the court's oversight in scheduling a Ferreira conference will not toll the statutory time frame or constitute extraordinary circumstances

12

by itself. Paragon, 202 N.J. at 426. Similarly, attorney inadvertence does not constitute extraordinary circumstances. Palanque, 168 N.J. at 405. These circumstances, either individually or in combination, have not been recognized as extraordinary.

Plaintiffs' reliance on Paragon is misplaced. In Paragon, a defendant raised the affidavit of merit statute as a defense, but a Ferreira conference was never conducted. 202 N.J. at 420. After the 120-day period, the court granted defendant's motion to dismiss for failing to comply with the statute. Ibid. The Supreme Court reversed, finding extraordinary circumstances due to conflicting Appellate Division decisions regarding the tolling effect of a court's failure to schedule a Ferreira conference. Id. at 425-26. The Court concluded with the firm warning that "going forward, reliance on the scheduling of a Ferreira conference . . . is entirely unwarranted and will not serve to toll the statutory time frames." Id. at 426. The mixed-signals present in Paragon no longer exist, and the case cannot be analogized to the circumstances here.

Plaintiffs' reliance on Buck is similarly misplaced. In Buck, the plaintiff brought a medical malpractice claim against a defendant who was board-certified in emergency medicine. 207 N.J. at 382. The plaintiff's counsel did not know the capacity in which the defendant was practicing at the time, and so

13

filed two affidavits from physicians board-certified in psychiatry and emergency medicine. Ibid. No Ferreira conference was held, and the trial court dismissed the complaint because the defendant certified that he treated plaintiff in his role as a practitioner of family medicine, and the affidavits filed were not by equivalent specialists. Id. at 383. The Supreme Court reversed, holding "[t]his is not a case of a desperate plaintiff unable to find a physician willing to aver to a claim of malpractice. . . . Rather, this is a case of a plaintiff who has made good-faith attempts to satisfy the statute." Id. at 395. The Court concluded by mandating that going forward, physician defendants must include in their answer "the field of medicine in which he specialized, if any, and whether his treatment of the plaintiff involved that specialty." Id. at 396.

Here, again plaintiffs' case is distinguishable from Buck. While it is true a Ferreira conference was not held in either case, the similarities end there. CFG complied with the mandate issued in Buck and identified the relevant medical staff by name and specialty. Plaintiffs had every opportunity to produce a timely filed affidavit by a similarly equivalent specialist. On this record, we discern no extraordinary circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0279-22